**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO. 8:26-cv-02998

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

vs.

MARKETOPIA LLC.

Defendant.
____________________________________/

**JOINT MOTION FOR APPROVAL OF CONSENT DECREE**

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and Defendant Marketopia LLC ("Marketopia"), pursuant to Federal Rules of Civil Procedure 7(b)(1) and 65(d), respectfully request that the Court approve and enter the attached Consent Decree.

## I. Factual Background

1. The EEOC is the federal agency responsible for enforcing federal laws prohibiting employment discrimination, including Title VII of the Civil Rights Act of 1965, as amended by the Pregnancy Discrimination Act ("Title VII") and the Pregnant Workers Fairness Act ("PWFA"). The EEOC represents the public interest when litigating claims, and, through injunctive relief, it seeks to protect the rights of both the individual claimant and similarly

situated employees by deterring the employer from future discrimination.

2. Charging Party, B.B., filed a Charge of Discrimination against Marketopia on July 14, 2025. The EEOC conducted a thorough administrative investigation into the allegations raised in the Charge, which included collecting and reviewing information and documents from Charging Party and Marketopia and interviewing witnesses with relevant knowledge.

3. The EEOC filed this action on September 30, 2026, alleging that Marketopia discriminated against B.B. violated Title VII and the PWFA by cancelling her interview and failing to hire her because of her pregnancy and because of the anticipated need to provide a reasonable accommodation related to pregnancy, childbirth, or related medical conditions, including leave for childbirth and recovery. The Complaint seeks monetary and injunctive relief.

4. Marketopia denies the EEOC's allegations and denies that it engaged in any unlawful conduct.

5. After comprehensive settlement negotiations, the parties agreed to resolve this action under the terms reflected in the Consent Decree executed on September 30, 2026, attached as **Exhibit 1**. The proposed Consent Decree reflects the terms of the monetary and injunctive relief to which the parties agreed after contemplating the specific facts of the case.

6. The Parties respectfully request that the Court approve the proposed Consent Decree.

## II. Legal Analysis

### A. The Consent Decree should be approved

In the Eleventh Circuit, the district court must review a consent decree to ensure that it is not "unlawful, unreasonable, or inequitable." *United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998). As set forth in *United States v. City of Jackson, Miss.*, 519 F.2d 1147 (5th Cir. 1975), a consent decree "is a highly useful tool for government agencies, since it maximizes the effectiveness of limited law enforcement resources; by reaching agreement with private parties as to the specifics of substantial compliance, the government may avoid the risks as well as the costs of full scale litigation of each point." *Id.* at 1151-52. Thus, where "the government has, to its satisfaction, successfully negotiated a comprehensive voluntary accord," *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 848-50 (5th Cir. 1975), the consent decree is entitled to a presumption of validity. *United States v. Bay Area Battery*, 895 F. Supp. 1524, 1528 (N.D. Fla. 1995). Indeed, when plaintiff is an executive branch agency responsible to enforce the statute that provides the basis for the consent decree, courts should defer to the agency's experience and expertise in handling such matters. *See id.*

As set forth in *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, No. CV 111–174, 2013 WL 164516 (S.D. Ga. Jan. 15, 2013), courts reviewing consent decrees look to whether there is "evidence that the consenting parties had

anything other than an arm's length, good faith, settlement negotiation," and whether "the proposed Decree requires the . . . Defendants to bear the cost of the harm for which they are legally responsible." *Id.* at *2. Courts further look to whether the consent decree is consistent with the public objectives sought to be obtained by the legislation at issue. *Id.* at *2-3; *see also United States v. Miami-Dade Cnty., Fla.*, No. No. 12–24400–CIV, 2014 WL 7534027, at *3 (S.D. Fla. Apr. 10, 2014) (looking at the "good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation," as well as whether the consent decree was consistent with the Clean Water Act). "So long as the settlement is fair, adequate, reasonable, and consistent with the goals of the applicable law, the court should approve the consent decree, even if its terms are not those the court itself might have fashioned, or considers as ideal." *United States v. Colonial Oil Indus., Inc.*, No. 4:24-CV-00069-RSB-CLR, 2024 WL 4291864, at *2 (S.D. Ga. Sept. 25, 2024) (citation omitted).

In this case, the Consent Decree is not "unlawful, unreasonable, or inequitable." Prior to initiating this lawsuit, the Parties engaged in substantive, informal negotiations in an effort to resolve the matter. The Parties exchanged information, evaluated claims and defenses including damages allegedly incurred by the Charging Party, and tested potential resolution terms, resulting in a comprehensive settlement providing monetary relief to the Charging Party, and requiring prospective injunctive relief for a

term of three (3) years. The Consent Decree was the product of thorough, adversarial, and good-faith process, and there is no suggestion of collusion in this litigation. *See, e.g.*, *Fla. Wildlife Fed'n, Inc. v. Jackson*, No. 4:08cv324-RH/WCS, 2009 WL 5217062, at *5 (N.D. Fla. Dec. 30, 2009) (approving Consent Decree where, among other factors, parties agreed to settle at arm's length, attorneys were experienced, and the "record includes not a hint of collusion.").

In addition, the Parties' Consent Decree reflects a compromise based on litigation risks. The amount of injunctive terms and monetary relief for the Charging Party, B.B., was the subject of significant negotiations. The agreed monetary relief was a reasonable compromise under the circumstances and in consideration of the litigation risks on both sides. (Ex. 1 at pp. 4-5). This is a compromise figure that reflects the divergent positions of the Parties on the merits of the case.

In addition, the Consent Decree is consistent with the goals of the Title VII and the PWFA. It provides management, human resources, and employee training on employee and applicant rights and employer responsibilities under Title VII and the PWFA, including providing reasonable accommodations for pregnancy, childbirth, or related medical conditions. (Ex. 1 at pp. 10-13); revision of policies concerning Title VII discrimination, the PWFA, and reasonable accommodations. (*Id.* at pp. 8-10); appointment of an EEO

Consultant (*Id.* at pp. 7-8); monitoring, reporting and record-keeping (*Id.* at pp. 13-14); and posting of a notice regarding the Consent Decree (*Id.* at p. 14). *See, e.g., Colonial Oil Indus., Inc.*, 2024 WL 4291864, at *3 (noting that the consent decree furthers the goals of the Clean Air Act where it implements corrective measures designed to reduce air pollution and serves the public interest by avoiding litigation). Importantly, these measures are designed to prevent discrimination and aim to protect the public interest. Accordingly, for this additional reason, the Decree is lawful, reasonable, and equitable.

**a. The Consent Decree Conforms to Fed. R. Civ. P. 65(d)**

The Court must consider whether the Consent Decree conforms to Rule 65 of the Federal Rules of Civil Procedure. Here, the Parties' Consent Decree does conform to Rule 65 because it states the reasons for its issuance; sets forth the specific terms with which the Parties must comply; and describes in detail the acts restrained and required.

For example, the Consent Decree provides a summary of the allegations and states that the Parties signed the Consent Decree "[i]n the interests of resolving this matter without the expense and uncertainty of further litigation. . . ." (Ex. 1 at p. 2). The Consent Decree also provides for monetary relief for the Charging Party B.B. (*Id.* at pp. 4-5).

The Consent Decree further provides for a three-year duration (*Id.* at pp. 3-4). The Consent Decree also identifies specific EEO policy revisions that

Marketopia must implement (*Id.* at pp. 8-10). The provisions of the Consent Decree are clear and specific in that they enjoin clearly identifiable conduct. *See Ennels v. Ala. Inns. Assocs.*, 581 F. Supp. 708, 709 (M.D. Ala. 1984) (injunction enforceable that "enjoined and restrained [defendant] from discriminating, on the basis of race, against any named plaintiff or any other black person in offering or furnishing service at Adam's in Montgomery, Alabama."). Accordingly, the Consent Decree conforms to Rule 65.[1]

Therefore, the Parties respectfully request that the Court approve and execute the attached Consent Decree and retain jurisdiction to enforce the terms of the Consent Decree. *See, e.g., Fla. Ass'n for Retarded Citizens, Inc. v. Bush,* 246 F.3d 1296, 1299 (11th Cir. 2001) (district court's assertion that plaintiffs should seek relief from consent decree by bringing a new lawsuit would "require the parties and the courts to waste judicial resources re-litigating issues which have been dealt with [and] it would also deny the plaintiffs the benefit of the bargain which was reached in the original consent decree and which defendants obliged themselves to provide.").

## III. Conclusion

For the foregoing reasons, the Parties respectfully request that this

[1] It is Marketopia's position that it voluntarily agreed to the terms in the Consent Decree to uphold and maintain its compliance with federal, state, and local laws rules and regulations.

Court grant this joint motion for approval of the Consent Decree, execute the attached Consent Decree, administratively close this action, retain jurisdiction to enforce the terms of the Consent Decree, and enter any further relief that the Court deems equitable and just.

**DATED: September 30, 2026.**

Respectfully submitted,

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

*/s/ Austin Case*
AUSTIN CASE
Connecticut Bar No. 439030
Trial Attorney
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Phone: (786) 648-5846
Austin.Case@eeoc.gov
*Counsel for Plaintiff*

**COLE SCOTT & KISSANE, P.A.**

*/s/ Anna M. Urie*
Anna M. Urie
Florida Bar No. 127455
500 N. Westshore Blvd., Ste. 700
Tampa, Florida 33609
(813) 509-2632
Anna.Urie@csklegal.com
*Counsel for Defendant*